CITY OF NEW ROCHELLE, Plaintiff, *v.* DOUGLAS PAGE-SHARP, Defendant.

City Court of New Rochelle, August 29, 1949.

No appearance for plaintiff.

No appearance for defendant.

Fasso, J.   The defendant herein is charged with a violation of subdivision 1 of section 17 of article III of the General Ordinances of the City of New Rochelle, which prohibits the operation of a vehicle on a public highway of this city at a speed in excess of twenty-five miles an hour.   The defendant, through the United States Mission to the United Nations, has forwarded the summons issued to him to this court, and has called the attention of the court to various laws and treaties, by virtue of which it is contended that the proceedings against the defendant should be discontinued.   The defendant, Douglas Page-Sharp, is Third Secretary of the Australian Mission to the United Nations.

The claim for diplomatic immunity rests upon these authorities:  1. Section 252 of title 22 of the United States Code. This section prohibits the arrest or imprisonment of any ambassador or public minister of any foreign country, and

2. Section 15 of the Agreement Between the United States and the United Nations regarding Headquarters of the United Nations, enacted as Public Law 357 of the 80th Congress.   This section provides that such resident members of the staff of any ambassador or public minister as may be agreed upon by the

Government of the United States, the Secretary General of the United Nations and the Government of the Member Concerned, shall be entitled to the same privileges and immunities in the United States as the Government of the Member concerned accords to our diplomatic envoys.

The first question before the court is whether or not the defendant is entitled to the diplomatic privileges and immunities accorded by law to diplomatic representatives of foreign nations to the United States of America. The defendant, Mr. Douglas Page-Sharp, is, without question, a person who, in a proper case, is entitled to such privileges and immunities. He is listed in a booklet issued by United States Mission to the United Nations in March, 1949, as a member of the Australian delegation entitled to diplomatic courtesy.

The second question is whether or not the defendant is entitled to immunity by virtue of section 252 of title 22 of the United States Code. By virtue of this section, an ambassador or a person in the position of the defendant is entitled to immunity against arrest or imprisonment. The defendant has merely been summoned to appear in this court on a charge of speeding. Such a summons is, at best, no more than an invitation to appear. Where a person fails to appear pursuant to such a summons, the court, in the course of its business, issues a warrant of arrest. Since the defendant is entitled to the privileges and immunities of an ambassador, the court may not, in this case, issue a warrant of arrest. As a consequence, if the defendant either refuses or fails to appear, the court has no power to proceed further.

The third question is whether or not section 15 of the Headquarters Agreement, enacted as Public Law 357 of the 80th Congress, extends privileges to the defendant. The defendant must be accorded, because of this section, the same privileges and immunities that a diplomatic envoy of the United States would receive in Australia. If an American diplomat is immune from prosecution for violation of the speed regulations in Australia, this defendant must be allowed the same privileges in this country. No authority has been cited to the court that indicates an American diplomat may operate with impunity a motor vehicle in Australia in excess of the speed laws. If the defendant, through the United States Mission, establishes this to be a fact, the court, would be required to dismiss the charge.

It is well to note, despite what has been stated above, that a serious question exists as to just what is covered by the term

" privileges and immunities " as used in section 15 of Public Law 357. If immunity from traffic regulations are included in the term, section 15 would seem to be in conflict with section 27, for the latter section requires construction of Public Law 357 in the light of its primary purpose. What is the primary purpose of the United Nations Agreement with the United States? It is to promote peace and safety for every person in the world. It recognizes that all individuals have a God-given right, regardless of position or station in life, to peace and to personal safety. Traffic regulations exist all over the world to protect persons and property. It follows that all persons who use motor vehicles are under a strong moral obligation, no matter in what country they operate, to exercise due care and to comply with such regulations so as to achieve the ends for which they have been enacted. No exceptions should be made for high government officials, whether they are American envoys abroad or foreign diplomats in this country. Our democracy is based upon the fundamental concept of equality of justice and equal protection of the laws for all. That same concept conforms with the ideals of the United Nations Organization.

It is likely that the question whether ambassadors, public ministers and persons similarly situated should be amenable to the traffic laws of the country in which they operate automobiles has never been specifically considered. It is a question which, in the opinion of this court, can be settled, and should be settled, by appropriate action by the United Nations Organization. Such action will avoid possible misunderstanding and possible friction, not only in the United States but abroad.

In view of the foregoing, the court will dismiss the charge, as it must do, if the defendant elects not to appear. Likewise, if the United States Mission to the United Nations will submit proof to this court that our envoys to Australia are immune from prosecution for speeding, the charge against the defendant will be dismissed. If the defendant prefers, he may, of course, plead guilty, in which event the court would impose sentence; or, on the other hand, he may plead not guilty, in which event the case will be set down for trial.

The case is adjourned to September 13, 1949, so as to afford the defendant, through the United States Mission, an opportunity to proceed as he may be advised.